UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHILIP WILLIAMS,

                                    Plaintiff,                    **REPORT AND**
                                                                 **RECOMMENDATION**
                    -against-                                    CV 16-1992 (ADS)(AYS)

TOWN OF HEMPSTEAD, H2M ARCHITECTS,
ENGINEERS, LAND SURVEYING AND
LANDSCAPE ARCHITECTURE, D.P.C., GAPPSI,
INC., MGP LANDSCAPE CONSTRUCTION, LLC
d/b/a GAPPSI, L&G RUGGIERO, INC., and
RAYMOND SCHWARZ,

                                    Defendants.
-----------------------------------------------------------------X
**ANNE Y. SHIELDS, United States Magistrate Judge:**

        Before the Court, on referral from the Honorable Arthur D. Spatt for Report and

Recommendation, are three motions, pursuant to Federal Rule of Civil Procedure 56: (1) for

partial summary judgment by Defendants Town of Hempstead and Raymond Schwarz; (2) for

summary judgment by Defendant H2M Architects, Engineers, Land Surveying and Landscape

Architecture, D.P.C.; and. (3) for partial summary judgment by Plaintiff. Defendants Gappsi,

Inc., MGP Landscape Construction, LLC d/b/a Gappsi, and L&G Ruggiero, Inc. have not moved

for summary judgment and are not part of the instant Report and Recommendation. For the

following reasons, this Court respectfully recommends that Defendants' motions be granted in

part and denied in part and that Plaintiff's motion be denied in its entirety.

<u>BACKGROUND</u>

        The relevant facts, as set forth below, are taken from the parties' Local Civil Rule 56.1

statements, as well as the documents offered by the parties in support of their respective motions.

Plaintiff, Philip Williams ("Williams" or "Plaintiff"), is the owner of record of the premises formerly known as 27 Garden City Boulevard, West Hempstead, New York (the "Premises"). (Pl. Loc. Civ. R. 56.1 Stmt. ("Pl. 56.1") ¶¶ 1, 16.) Plaintiff co-owned the Premises with his wife, Kathleen Williams, until she passed away in 2003. (Id. ¶ 18; Defs. Town of Hempstead and Schwarz Loc. Civ. R. 56.1 Stmt. ("Town 56.1") ¶ 19.) The Premises was Plaintiff's only home and contained his personal property. (Pl. 56.1 ¶ 19.)

There is a long history between Defendant Town of Hempstead (the "Town") and the Premises, beginning in 2007, wherein the Town would respond to various complaints by neighbors concerning the Premises, make repairs to the Premises, and post Notices of Violations. (Town 56.1 ¶ 28.) Between October 2007 and August 2014, there were six complaints made to the Town concerning the condition of the Premises, abandoned vehicles on the property, loose siding, a tree growing in through a window, animals entering the house, broken windows, animal carcasses in the yard, and possible vagrants living in the house. (Id. ¶ 31.) In or around 2007, the Premises needed some repair, including to the stucco, which had come loose. (Id. ¶ 25.) On December 27, 2007, a Notice of Violation was issued to the Premises for an unregistered motor vehicle being stored on the property by Plaintiff's son. (Id. ¶¶ 26-27.)

Between 2007 and 2010, Plaintiff's daughter, Sarah was residing at the Premises. (Id. ¶ 48.) During this time, Plaintiff was receiving mail at the Premises and traveling back and forth to Florida. (Id. ¶¶ 47, 50.) Plaintiff did not make any repairs to the loose stucco at the Premises during this time. (Id. ¶ 49.)

In 2011, Plaintiff again traveled to Florida, during which time no one resided at the Premises. (Id. ¶ 51.) Plaintiff performed minor repair work to small areas of the Premises where stucco had fallen off in 2011. (Id. ¶ 52.)

In 2012, Plaintiff again traveled to Florida and remained there for approximately four or five months. (Id. ¶ 54.) During this time, Plaintiff was receiving mail at the Premises and did not request that his mail be forwarded to Florida. (Id. ¶¶ 53, 60.) On May 30, 2012, the Town's Department of Sanitation received a complaint that the Premises was overgrown. (Id. ¶ 59.) In October 2012, Plaintiff was at the Premises when Super Storm Sandy uprooted a tree on the sidewalk, fell on electrical and cable wires and disconnected electricity to the neighboring homes. (Id. ¶ 55.) During this same time, unrelated to Super Storm Sandy, there was water damage to the interior of the Premises from a leak in the roof. (Id. ¶ 56.) Plaintiff's son repaired the leak by placing a piece of plywood on the roof near the chimney. (Id. ¶ 57.)

In March 2013, the Town responded to the Premises due to a complaint made regarding uncut grass, unregistered motor vehicles on the property and the house being in disrepair. (Id. ¶ 63.) The Town issued Notices of Violation to the Premises on March 14, 2013, May 10, 2013, and October 2, 2013, all of which were taped to the door of the Premises with blue masking tape. (Id. ¶¶ 64-65.) In May 2013, the Town sent a letter to the Premises addressed to Owner/Occupant, advising that it was investigating a possible violation regarding abandoned motor vehicles in the driveway. (Id. ¶ 66.)

During 2013, Plaintiff received mail at the Premises and, upon his return from Florida, would look through the delivered mail and sort out the "junk mail." (Id. ¶ 67.) Plaintiff considered any mail addressed to Owner/Occupant to be junk mail and would throw it away. (Id. ¶ 68.) In May and June 2013, unregistered motor vehicles continued to be stored on the Premises and additional areas of stucco required repair. (Id. ¶¶ 69-71.) In June and September 2013, in response to complaints made to the Town's hotline, the Town's Sanitation Department

responded to the Premises to cut the lawn and to remove litter and debris present on the Premises.  (Id. ¶¶ 72-73.)

In total, the Town received thirteen complaints regarding the Premises through the Town hotline, as well as letters and emails sent directly to the Town Building Department, over the course of six years.  (Id. ¶ 81.)  In September 2013, the Town conducted an owner search for the Premises based on the lack of communication from anyone at the Premises with regard to the various Notices of Violation issued over the previous six years.  (Id.  ¶¶ 77-78.)  At this time, the garage of the Premises had no door, the front door and windows needed paint, stucco was buckling and falling off the Premises, ivy was growing under the eaves, there was a water leak in the roof, and a problem with the kitchen ceiling.  (Id. ¶ 82.)

In 2014, Plaintiff remained in Florida from March until August, returning to the Premises for a short time in July, and then traveling to Florida again until December.  (Id. ¶ 83.)  During this time, Plaintiff had the United States Postal Service hold his mail.  (Id. ¶ 91.)

In September 2014, the Premises was brought to the attention of the individual Defendant, Raymond Schwarz ("Schwarz"), who is the Supervisor of Inspection Services for the Town of Hempstead Building Department (the "Building Department").  (Id. ¶¶ 3, 94.)  Schwarz was advised that several Notices of Violation had been posted at the Premises and still remained there.  (Id. ¶ 94.)  Schwarz was further advised that, given the Premises' disrepair, it might fall within Chapter 90 of the Hempstead Town Code (the "Town Code"), which pertains to Dangerous Buildings and Structures ("Chapter 90").  (Id.)  Based upon the fact that Notices of Violation were not being removed from the Premises, no one was responding to letters sent by the Town or answering the door when a Town representative would attempt to make contact, and

various complaints from neighbors concerning the Premises' disrepair, the Town believed the Premises to be vacant and abandoned.  (Id. ¶ 95.)

In October 2014, the Town's Sanitation Department again cut the grass at the Premises and removed litter and debris from the property.  (Id. ¶ 96.)  Around this same time, Schwarz directed that the bubbling stucco on the Premises be removed.  (Id. ¶ 97.)  Defendant Gappsi, Inc. ("Gappsi") removed the bubbling and loose stucco from the Premises on October 21, 2014. (Id. ¶ 98.)  That same day, Schwarz directed that photographs of the Premises be taken to document the condition of the Premises, as well as the work performed by Gappsi.  (Id. ¶¶ 100-01.)

Pursuant to Chapter 90 of the Town Code, the Building Department sent a certified letter dated October 28, 2014, addressed to both Plaintiff and his wife – then deceased – at the Premises, advising that a recent inspection of the Premises was performed and that the Town considered the Premises to be in violation of Chapter 90.  (Id. ¶ 103.)  The October 28, 2014 letter was not sent by registered mail.  (Pl. 56.1 ¶ 37.)  The letter was returned to the Town marked "Return to Sender.  Moved left no address.  Unable to forward."  (Town 56.1 ¶ 103.)

By certified letter dated November 24, 2014, addressed to Plaintiff and his deceased wife at the Premises, the Town advised Plaintiff that a survey of the Premises would commence on December 10, 2014 at 3:00 p.m.  (Id. ¶¶ 108, 179.)  The November 24, 2014 letter was not sent by registered mail.  (Pl. 56.1 ¶ 40.)  The letter was again returned to the Town marked "Return to sender.  Moved left no address.  Unable to forward."  (Town 56.1 ¶ 108.)  Plaintiff traveled to Florida on December 3, 2014 to undergo knee replacement surgery and did not return to New York until April 1, 2015.  (Id. ¶ 109.)

On December 10, 2014, Michael Bonacasa ("Bonacasa"), a registered architect and the Vice President of Defendant H2M Architects, Engineers, Land Surveying and Landscape Architecture, D.P.C. ("H2M"), Schwarz, and Roy Gunther, a Town employee, conducted a survey inspection of the Premises.  (Pl. 56.1 ¶ 20; Town 56.1 ¶ 110; H2M's Loc. Civ. R. 56.1 Stmt. ("H2M 56.1") ¶¶ 1-2.)  H2M maintains a contract with the Town wherein it performs surveys of properties to determine whether the structures are unsafe and provides recommendations to the Town concerning those structures.  (H2M 56.1 ¶ 6.)  H2M has maintained this contract with the Town since 2008, when, in response to a request for proposals issued by the Town, H2M won the bid to serve as outside architect to the Town.  (Id. ¶¶ 3-5, 9.) H2M is the Town's consultant in Chapter 90 cases.  (Id. ¶ 7.)

Bonacasa's role in conducting a survey for the Town is to determine if, in his professional opinion, a dwelling or building should be demolished based on the criteria enumerated in Chapter 90 of the Town Code.  (H2M 56.1 ¶ 10.)  When conducting his survey in the instant action, Bonacasa observed that the Premises was considerably damaged and looked abandoned with ample exterior damage where water had infiltrated the Premises.  (Town 56.1 ¶ 111.)  Bonacasa also observed vegetation on the Premises' roof, moss on the shingles, and that the shingles appeared deteriorated and dry rotted.  (Id. ¶ 112.)  Bonacasa directed Schwarz to have the unsafe stucco removed from the Premises, tar paper placed over the exposed areas, a tree limb that was hanging over the roof removed, and to secure the garage and tarp the roof.  (Id. ¶ 114.)  At the time of the survey, there were unregistered motor vehicles at the Premises, a garage without a door, vegetation growing into windows, bare wood exposed where paint had decayed, holes in the soffit, rot located in areas where the stucco had been removed or fallen off, bubbling stucco, and gaps where the structural connection was gone.  (Id. ¶ 116.)

On December 12, 2014, Schwarz met Gappsi at the Premises and directed them to perform the work requested by Bonacasa. (Id. ¶ 119.) Schwarz also requested Gappsi cut back two large tree branches that were growing into the roof line. (Id. ¶ 123.) Gappsi completed the work and took photographs of the Premises, as requested by the Town. (Id. ¶ 131.) After receiving the photographs from Gappsi, Schwarz met with Bonacasa to review them. (Id. ¶ 132.) The photographs showed that the roof rafters and ceiling joists of the Premises were dry rotted and damaged. (Id. ¶ 134.)

Bonacasa thereafter prepared a written Survey Report, which is dated December 10, 2014 but was actually issued a few days later. (Pl. 56.1 ¶ 33; Town 56.1 ¶¶ 138-39; H2M 56.1 ¶ 19.) The Survey Report is Bonacasa's assessment of the Premises and his recommendation to the Town based on his analysis of the conditions of the property. (Town 56.1 ¶ 141; H2M 56.1 ¶¶ 16, 19.) The Survey Report is signed solely by Bonacasa on behalf of H2M and is addressed to "John Rottkamp, Commissioner of Buildings." (Pl. 56.1 ¶¶ 33-34.) The Survey Report states that "[t]his dwelling has deteriorated in excess of 33.3%. The reconstruction of the dwelling will be in excess of 50% and will need a new Certificate of Occupancy." (Id. ¶ 36.)

By certified and registered mail, the Town sent a Chapter 90 Notice of Violation addressed to Plaintiff and his deceased wife at the Premises. (Pl. 56.1 ¶ 42; Town 56.1 ¶ 145.) The Notice of Violation advised that a survey of the Premises had been conducted on December 10, 2014, which "exhibited significant structural damages and failure . . . ." (Town 56.1 ¶ 145.) The Notice of Violation was returned to the Town with the notation "Return to Sender. Moved left no address. Unable to forward." (Pl. 56.1 ¶ 42; Town 56.1 ¶ 145.) Plaintiff did not receive the December 22, 2014 Notice of Violation. (Pl. 56.1 ¶ 42; Town 56.1 ¶ 146.)

On December 30, 2014, the Town received a complaint that the front door of the Premises was open.  (Town 56.1 ¶ 148.)  Schwarz directed a Town employee to investigate the complaint, take photographs of the interior of the Premises, ensure that the Premises was secured, and engage Gappsi to board up the front door.  (Id.)  Gappsi responded to the Premises that same day and boarded up the front door.  (Id. ¶ 149.)  The Town entered the Premises on December 30, 2014 and took photographs of the interior.  (Id. ¶ 152.)  Prior to December 30, 2014, the Town had not entered the Premises.  (Id. ¶ 150.)

When the Town inspected the interior of the Premises on December 30, 2014, it found that the entire ceiling in the upstairs bathroom had collapsed and fallen into the bathtub.  (Id. 168-69.)  The ceiling in the kitchen of the Premises had also collapsed due to water damage.  (Id. ¶ 170.)  In addition, the ceiling and the wall adjacent to the Premises' chimney in the upstairs back bedroom was damaged such that the brick of the chimney was visible from the interior of the Premises.  (Id. ¶ 171.)

Pursuant to Chapter 90, the Town sent a letter dated February 9, 2015, addressed to Plaintiff and his deceased wife at the Premises, advising that the Premises would be "the subject of a Public Hearing on February 24, 2015 at 10:30 AM at the Nathan LH Bennett Pavilion located at Town Hall Plaza."  (Pl. 56.1 ¶¶ 43-44, 185; Town 56.1 ¶ 161.)  The February 9, 2015 letter was not sent by registered mail.  (Pl. 56.1 ¶ 43.)  The letter was returned to the Town with the notation "Return to Sender.  Moved left no address.  Unable to forward."  (Pl. 56.1 ¶ 43; Town 56.1 ¶ 161.)

The Town also posted a notice pursuant to Chapter 90 on the Premises.  (Town 56.1 ¶ 162.)  Public hearing notices are posted in the newspaper, on the Town of Hempstead's website, and at the property.  (Id. ¶ 163.)  Plaintiff never observed any Town employee on the Premises,

nor did he observe any notices posted on the door.  (Id. ¶ 165.)  At no time prior to the public

hearing did the Town deem the Premises an emergency under Chapter 90.  (Pl. 56.1 ¶ 59.)

A public hearing was held on February 24, 2015 at One Washington Street, Town Hall

Pavilion, Hempstead, New York.  (Id. ¶ 45.)  At that time, the Commissioner of the Building

Department, John Rottkamp, presented a petition he had prepared to the Town Board, and

Councilman Edward Ambrosino moved to demolish the Premises.  (Id. ¶¶ 46; Town 56.1 ¶¶ 188-

89.)  The Town Board passed a resolution authorizing the demolition and removal of the

Premises pursuant to Chapter 90.  (Town 56.1 ¶ 189.)  The decision to demolish the Premises

was made solely by the Town Board, not Bonacasa or H2M.  (H2M 56.1 ¶ 21.)

Prior to the demolition, Defendant L&G Ruggiero, Inc. ("L&G") instructed the utility

companies to disconnect the utilities to the Premises.  (Town 56.1 ¶ 194.)  L&G also contracted

with a plumber to have the water and sewer service severed from the Premises.  (Id. ¶ 195.)  In

addition, L&G contracted with Nassau County to perform a rodent inspection and with Unatech

to remove the gas tank located on the Premises.  (Id. ¶ 196.)  L&G applied for a demolition

permit from the Town prior to performing any demolition work at the Premises.  (Id. ¶ 197.)

The demolition was scheduled to commence on May 8, 2015; however, it was not

performed because of a problem with L&G's excavator.  (Id. ¶¶ 198, 200.)  L&G began

demolition on May 11, 2015 and continued through May 13, 2015.  (Id. ¶¶ 201-02.)  In total, the

demolition took three days.  (Id. ¶ 205.)  After conferring with the Town, L&G also removed a

tree in the rear of the Premises because it was blighted.  (Id. ¶ 204.)  H2M had no responsibilities

in connection with the demolition of the Premises.  (H2M 56.1 ¶ 22.)

None of the Town's notices to Plaintiff advised that Plaintiff's personal property or

possessions would be destroyed, removed, or taken when the Premises was demolished.  (Pl.

56.1 ¶ 64.)  Nor did the notices advise Plaintiff that if he failed to remove his personal property and possessions prior to demolition, that such personal property would be discarded.  (Id. ¶ 66.) The Town Code does not provide for the preservation of personal possessions found in a property slated for demolition pursuant to Chapter 90.  (Town 56.1 ¶ 190.)  Nor does the Town have a procedure for storing the personal property of a homeowner whose home is demolished pursuant to Chapter 90.  (Pl. 56.1 ¶ 71.)  In addition, none of the Town's notices to Plaintiff advised that any trees, bushes or vegetation present on the Premises would be destroyed or demolished when the Premises was demolished.  (Id. ¶ 65.)  The Town believed Plaintiff was not living at the Premises when it mailed its various notices there.  (Pl. 56.1 ¶ 62.)

Plaintiff commenced the within action on April 22, 2016, pursuant to 42 U.S.C. § 1983, alleging violations of his Fourteenth Amendment rights to due process, both substantive and procedural, and seeking a declaratory judgment, pursuant to 28 U.S.C. § 2201, that Chapter 90 of the Hempstead Town Code is unconstitutional.  Plaintiff also alleges various state law claims, including negligence, conversion, trespass, constructive bailment, cutting and carrying off trees or timber, pursuant to Section 861 of New York's Real Property Actions and Proceedings Law ("RPAPL"), res ipsa loquitur, and wrongful eviction, pursuant to Section 853 of New York's RPAPL.  (See generally Compl.)  H2M and L&G have both filed cross-claims for contribution against all other Defendants and cross-claims for indemnification, solely against the Town. (H2M Ans. ¶¶ 15-16; L&G Ans. ¶¶ 14-15.)  The Town has filed cross-claims for contribution and indemnification against all other Defendants.  (Town Ans. ¶¶ 227-28.)

Presently before the Court are the motions for summary judgment by the Town and Schwarz (the "Town Defendants"), H2M, and Plaintiff.  The Town Defendants move for summary judgment on all of Plaintiff's causes of action except for the violation of procedural

due process, conversion, and cutting and carrying off trees or timber.  Conversely, Plaintiff moves for summary judgment solely with respect to those three claims.  Finally, H2M moves for summary judgment with respect to all of Plaintiff's claims alleged against it, as well as the Town Defendants' cross-claims against it for indemnification and contribution, and all other co-Defendants' cross-claims for contribution.

DISCUSSION

I.   <u>Legal Standard</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The burden is on the moving party to establish the lack of any factual issues.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The very language of this standard dictates that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986).  Rather, the requirement is that there be no "genuine issue of material fact." <u>Id.</u> at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986).  When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." <u>Id.</u> at 586.  In addition, the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide the district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988)) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

II.    Disposition of the Motions

A.    Procedural Due Process

"A procedural due process violation occurs when the government deprives a person of a protected life, liberty, or property interest without first providing notice and an opportunity to be heard." Reyes v. County of Suffolk, 995 F. Supp. 2d 215, 228 (E.D.N.Y. 2014) (citing B.D. v. DeBuono, 130 F. Supp. 2d 401, 432-33 (S.D.N.Y. 2000)). In order to prevail on his procedural due process claim, which is pled solely against the Town, Plaintiff must demonstrate that he "possessed a protected liberty or property interest and was deprived of that interest without due process of law." Reyes, 995 F. Supp. 2d at 228 (citing Kassim v. City of Schenectady, 255 F. Supp. 2d 32, 37 (N.D.N.Y. 2003)) (additional citation omitted).

Here, there is no dispute that Plaintiff had a protected property interest in the Premises itself, as well as the personal property and the trees and vegetation within the Premises. What is at dispute is whether the Town provided Plaintiff with notice sufficient to satisfy the constitutional requirements of procedural due process before demolishing the Premises. Despite this dispute, Plaintiff moves for summary judgment with respect to this claim.

To comport with the requirements of procedural due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (citing cases). "The notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance." Id. (internal and external citations omitted). "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." Id.

The Town argues that it provided Plaintiff with all notice due through the various mailings sent to the Premises over the years leading up to the demolition, as well as the posting of the various notices on the door of the Premises itself. Plaintiff, however, failed to respond to any of the Town's notices or communicate with the Town in any way. Conversely, Plaintiff argues that the Town's notices were not reasonably calculated to provide Plaintiff with notice because the Town believed the Premises to be abandoned and, therefore, knew that Plaintiff was not receiving the notices sent. Moreover, the notices sent to the Premises were returned to the Town, unopened, on more than one occasion. Plaintiff further argues that the Town failed to comply with the requirements of Chapter 90 in providing notice, since Chapter 90 requires that notices be sent by registered mail, which the Town did not do.

It is clear from the foregoing that a genuine issue of material fact exists with respect to Plaintiff's procedural due process claim, which precludes the entry of summary judgment. Accordingly, this Court respectfully recommends that Plaintiff's motion for summary judgment be denied with respect to his procedural due process claim.

B.    Substantive Due Process

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests."  Kia P. v. McIntyre, 235 F.3d 749, 758 (2d 2000) (quoting Washington v. Glucksberg, 521 U.S. 702, 720 (1997)).  To prevail on his substantive due process claim, which is pled against both the Town and Schwarz, Plaintiff must demonstrate that the state action was "so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection."  Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (quoting Tenebaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999)).  State action that is "incorrect or ill-advised" is insufficient to give rise to a substantive due process violation; rather, the action must be "conscience-shocking."  Cox, 654 F.3d at 275 (quoting Kaluczky v. City of White Plains, 57 F.3d 202, 211 (2d Cir. 1995)).

"In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity."  Dellutri v. Village of Elmsford, 895 F. Supp. 2d 555, 573 (S.D.N.Y. 2012) (quoting Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007)).  "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense and therefore unconstitutional."  Cox, 654 F.3d at 275 (quoting Tenenbaum, 193 F.3d at 600).

In moving for summary judgment on Plaintiff's substantive due process claim, the Town Defendants argue that the evidence before the Court fails to establish the requisite animus or malice on their part.  Rather, Plaintiff merely alleges that the Town Defendants failed to provide him with adequate notice of the demolition and that there was an insufficient basis for the Town Defendants to determine the Premises should be demolished.  In opposition, Plaintiff argues that

the Survey Report prepared by H2M – the basis upon which the Premises was demolished – was a sham and that others in the Town were aware of such and did nothing to correct it.  According to Plaintiff, both Schwarz and the Town facilitated H2M's preparation of the "sham Survey Report."  (Pl. Mem. of Law in Opp'n to Town's Mot. for Summ. J. 15.)  Plaintiff argues that, at a minimum, there are factual issues that warrant submitting his substantive due process claim to a jury.

The Court agrees with the Town Defendants.  Plaintiff has presented, at best, "absolutely no evidence which suggests that Defendants['] actions were anything worse than [possibly] incorrect or ill-advised."  Catanzaro v. Weiden, 188 F.3d 56, 64 (2d Cir. 1999).  "Absent some evidence of a culpable state of mind" on the part of the Town and Schwarz, which Plaintiff has wholly failed to adduce, "no reasonable trier of fact could find th[e] demolition [of the Premises] to be arbitrary, conscience-shocking or otherwise constitutionally oppressive."  Id.; see also First Nat'l Acceptance Co. v. City of Utica, 26 F. Supp. 3d 185, 199 (N.D.N.Y. 2014) (granting Defendant summary judgment with respect to Plaintiff's substantive due process claim on the ground that the evidence "does not indicate that [Defendant's] conduct was motivated by a desire to injure the Plaintiff or for some other improper purpose"); KShel Realty Corp. v. City of New York, No. 01 Civ. 9039, 2006 WL 2506389, at *10 (S.D.N.Y. Aug. 30 2006) ("As to whether the decision to demolish the Building was arbitrary, Plaintiffs present absolutely no evidence which suggests that the City's actions were anything worse than incorrect or ill-advised.").  Since Plaintiff "has not provided any support to substantiate a theory of deliberate harm by [the Town and Schwarz], . . . "[t]e conduct alleged by Plaintiff simply does not rise to the level of being so outrageous to violate Plaintiff's substantive due process rights."  Dellutri, 895 F. Supp. 2d at 574.

Based on the foregoing, this Court respectfully recommends that the Town Defendants'

motion for summary judgment be granted as to Plaintiff's substantive due process claim.

C.      The Constitutionality of Chapter 90

Plaintiff's fourth cause of action, pled solely against the Town, seeks a declaratory

judgment, pursuant to 28 U.S.C. ¶ 2201, that Chapter 90 of the Town Code is unconstitutional,

both on its face and as applied to Plaintiff.  Specifically, Plaintiff alleges that Chapter 90 is not

rationally related to any legitimate government interest and results in "the arbitrary and

unnecessary intrusion into Defendant Town's residents' use [and] enjoyment of private real and

personal property, as well as the unnecessary destruction of private real and personal property."

(Compl. ¶ 121.)

"States have the authority under their police powers to enact laws protecting the health,

safety, and welfare of their citizens."  Castanza v. Town of Brookhaven, 700 F. Supp. 2d 277,

292 (E.D.N.Y. 2010) (citing United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt.,

550 U.S. 330, 342 (2007)).  Section 10 of New York's Municipal Home Rule extends this police

power to counties, cities, towns and villages.  See Castanza, 700 F. Supp. 2d at 292 (citing N.Y.

Mun. Home Rule § 10.)  "An exercise of government's police power is presumed to be

constitutionally valid and is subject to rational basis review."  Castanza, 700 F. Supp. 2d at 292

(citing Egogen, LLC v. Town of Italy, 483 F. Supp. 2d 149, 158 (W.D.N.Y. 2006)); see also

Bibb v. Navajo Freight Lines, 359 U.S. 520, 529 (1959) (holding that exercise of police power is

presumed to be constitutionally valid).

In order to demonstrate that Chapter 90 of the Town Code is not a valid exercise of the

Town's police power, Plaintiff "must show that its means are not reasonably necessary for the

accomplishment of its purpose."  Castanza, 700 F. Supp. 2d at 292 (citing Goldblatt v. Town of

Hempstead, 369 U.S. 590, 594-95 (1962)).  Other than comparing Chapter 90 to various provisions of the New York Landlord Tenant Law, Plaintiff offers no factual evidence that Chapter 90 is unconstitutional.  Chapter 90 sets forth the procedures applicable to the securement or demolition of nuisances and dangerous buildings or structures.  (Siegel Decl. in Opp'n to Town Mot. for Summ. J., Ex. U.)  The legitimate public interest served by Chapter 90 is the public safety of the Town's residents, pursuant to the Town's police powers – specifically, safeguarding the Town's residents from harm associated with dangerous buildings and structures.  Plaintiff offers nothing from which the Court could conclude that Chapter 90 is not rationally related to this legitimate public interest or unreasonable in any way.

While Plaintiff makes much out of the fact that Chapter 90 allows for residents' personal property, including trees and vegetation, to be taken or destroyed in connection with a demolition, a review of Chapter 90 makes clear that the ordinance does not address the removal or destruction of personal property or vegetation.  Rather, Chapter 90 deals solely with dangerous buildings and structures and is reasonably related to the public interest it seeks to serve.  Plaintiff's claims regarding his personal property and vegetation are more properly addressed in the context of his procedural due process claim.

Accordingly, this Court respectfully recommends that the Town Defendants' motion for summary judgment be granted with respect to Plaintiff's request for a declaratory judgment that Chapter 90 of the Town Code is unconstitutional.

D.    Negligence Claims

Plaintiff's Complaint asserts two negligence claims against the Town – the fifth and sixth causes of action – and one against H2M – the eleventh cause of action.  Plaintiff asserts that the Town was negligent in its decision to demolish the Premises and with respect to the removal

and/or destruction of Plaintiff's personal property. (Compl. ¶¶ 123-47.) With respect to H2M, Plaintiff asserts that H2M was negligent in its inspection of the Premises and the creation of its Survey Report upon which the Town Board's decision to demolish the Premises was based. The Town Defendants and H2M both seek summary judgment as to all negligence claims asserted against them.

To succeed on a negligence claim under New York law, Plaintiff must demonstrate (1) that Defendants owed Plaintiff "a duty of care," (2) that Defendants "breached that duty," and (3) that Plaintiff "suffered harm substantially caused by" Defendants' breach. Adamson v. City of New York, No. 10-CV-2300, 2019 WL 181299, at *3 (E.D.N.Y. Jan. 9, 2019) (citing Pasternack v. Laboratory Corp. of Am. Holdings, 807 F.3d 14, 19 (2d Cir. 2015)). When considering a negligence claim against a municipality, "the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" Adamson, 2019 WL 181299, at *3 (quoting Velez v. City of New York, 730 F.3d 128, 134 (2d Cir. 2013)) (additional citation omitted).

"A government entity performs a purely proprietary role when its activities essentially substitute for or supplement traditionally private enterprises." Connolly v. Long Island Power Auth., 30 N.Y.3d 719, 727 (2018) (quoting Turturro v. City of New York, 28 N.Y.3d 469, 477-78 (2016)) (additional citation omitted). Conversely, a municipal entity will be deemed to have engaged in a governmental function "when its acts are 'undertaken for the protection and safety of the public pursuant to the general police powers.'" Adamson, 2019 WL 181299, at 3 (quoting Velez, 730 F.3d at 134-35) (additional citation omitted); see also Connolly, 30 N.Y.3d at 727 (same). "[T]he determination of the primary capacity under which a governmental agency was acting turns solely on the acts or omissions claimed to have caused the injury." Connolly, 30

N.Y.3d at 727 (citing <u>Matter of World Trade Ctr. Bombing Litig.</u>, 17 N.Y.3d 428, 447 (2011)). Generally, "no liability attaches for 'a violation of a general duty owed by the town to the public at large.'" <u>Okie v. Village of Hamburg</u>, 609 N.Y.S.2d 986, 989 (4th Dep't 1994) (citing <u>Garrett v. Holiday Inns</u>, 58 N.Y.2d 253, 257 (1983)).

In the within action, the Town argues that it was acting in a governmental capacity, not a proprietary one, when it issued Notices of Violation of the Town Code to Plaintiff and made the decision to demolish the Premises. (Town Reply Mem. of Law in Supp. of Mot. for Summ. J. 6.) Plaintiff, on the other hand, argues that the Town engaged in numerous proprietary activities when it made repairs to and demolished the Premises. (Pl. Mem. of Law in Opp'n to Town Mot. for Summ. J. 21-22.) The Court is not persuaded by Plaintiff's argument. The acts or omissions that Plaintiff asserts caused him injury arose out of the Town's alleged failure to provide sufficient notice of the demolition of the Premises and the Town's actions in securing the Premises, pursuant to Chapter 90 of the Town Code. Such actions clearly fall under the Town's general police powers. This Court finds that the enforcement of the Town Code and the demolishment of a building deemed to be unsafe or dangerous by a municipal entity is a governmental function. <u>Cf. Okie</u>, 609 N.Y.S.2d at 989 ("The issuance of a certificate of occupancy and/or a building permit is a governmental function for which a municipality may not be held responsible for damages."); <u>Carroll v. City of New York</u>, 234 N.Y.S.2d 563, 569 (Sup. Ct. 1962) ("The enforcement of a local ordinance is purely a governmental function"); <u>Meadows v. Village of Mineola</u>, 72 N.Y.S.2d 368, 370 (Sup. Ct. 1947) (The enactment and enforcement of a building code is a governmental function.").

"Where, as here, a municipality undoubtedly acts in a governmental capacity, a plaintiff may not recover without proving that the municipality owed a 'special duty' to the injured

party.'" <u>Velez</u>, 730 F.3d at 135.  (citing <u>Valdez v. City of New York</u>, 18 N.Y.3d 69, 75 (2011)).

The rationale behind this rule is that "to sustain liability against a municipality, the duty breached

must be more than that owed to the public generally." <u>Velez</u>, 730 F.3d at 135 (quoting <u>Valdez</u>,

18 N.Y.3d at 75).  The plaintiff bears the burden of proving a "special duty" exists and "where

the plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the

municipality that acted in a governmental capacity." <u>Velez</u>, 730 F.3d at 135 (quoting

<u>Applewhite v. Accuhealth, Inc.</u>, 21 N.Y.3d 420, 426 (2013)).  To establish a special relationship

beyond the duty that is owed to the public generally, Plaintiff must prove the following four

elements:

> (1) an assumption by the municipality, through promises or actions, of an affirmative
> duty to act on behalf of the party who was injured; (2) knowledge on the part of the
> municipality's agents that inaction could lead to harm; (3) some form of direct contact
> between the municipality's agents and the injured party; and (4) that party's justifiable
> reliance on the municipality's affirmative undertaking.

<u>Velez</u>, 730 F.3d at 135 (quoting <u>Applewhite</u>, 21 N.Y.3d at 430-31).

Here, there is not a shred of evidence before the Court to support even one of the

foregoing elements, let alone all four.  There was no assumption by the Town to act on Plaintiff's

behalf as the duties Plaintiff alleges to be owed by the Town are to the public at large, not

specifically to Plaintiff.  Moreover, there is undisputed evidence in this case that the Town never

had any direct contact with Plaintiff, which is what led the Town to believe the Premises were

abandoned and impacted its decision to demolish the Premises in the first place.  Finally,

Plaintiff has offered no evidence to support a finding that he justifiably relied upon the Town's

affirmative undertaking.  For these reasons, any negligence claims against the Town must fail

and this Court respectfully recommends that the Town Defendants' motion for summary

judgment be granted as to Plaintiff's fifth and sixth causes of action sounding in negligence.

With respect to H2M, the analysis is quite simple.  To be liable for negligence, the first element that must be established is the existence of a duty running from the defendant to the plaintiff.  See Fiedler v. Incandela, 222 F. Supp. 3d 141, 167 (E.D.N.Y. 2016) ("[W]ithout a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm."); Merrick Gables Ass'n, Inc. v. Town of Hempstead¸691 F. Supp. 2d 355, 364 (2010) (same).  Here, there was simply no duty owed by H2M to the Plaintiff. H2M had a contract with the Town to perform an inspection of the Premises and prepare the Survey Report.  Plaintiff was not a party to that contract.  In fact, it is undisputed that H2M has never even had any contact whatsoever with Plaintiff.

Plaintiff argues that "common concepts of logic, moral considerations, necessity of court regulation, social consequences and public policy considerations" require the Court to find that H2M owed Plaintiff a duty because the Town relied on H2M's Survey Report in determining whether to demolish the Premises.  (Pl. Mem. of Law in Opp'n to H2M Mot. for Summ. J. 6.)  In addition, Plaintiff asserts that since he was relying on the protections afforded to him in Chapter 90 of the Town Code, H2M "had a duty to conduct the survey inspection and survey report in a non-negligent manner."  (Id. at 7.)  Not surprisingly, however, Plaintiff cites no case law to support his arguments.  Under the facts presented here, H2M simply owed no duty to Plaintiff. As such, H2M cannot be held liable for negligence.

Based on the foregoing, this Court respectfully recommends that H2M's motion for summary judgment be granted with respect to Plaintiff's eleventh cause of action for negligence.

E.    Conversion

Plaintiff's seventh cause of action asserts a claim for conversion against both the Town and Gappsi, alleging that said Defendants removed or destroyed Plaintiff's personal property

from the Premises, or caused the Premises to be unsecured, which allowed for Plaintiff's personal property to be removed, destroyed or stolen. (Compl. ¶¶ 148-54.) Plaintiff moves for judgment as a matter of law with respect to this claim. The Town Defendants oppose the motion, asserting that the claim is "inextricably intertwined with the determination of Plaintiff's procedural due process claim," such that the factual issues surrounding both claims prevent summary judgment at this time. (Town Def. Mem. of Law in Supp. of Mot. for Summ. J. 31.) The Court agrees with the Town Defendants.

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." United States Small Bus. Admin. v. Feinsod, 347 F. Supp. 3d 147, 167 (E.D.N.Y. 2018) (quoting Colavito v. N.Y. Organ Donor Network, Inc., 8 N.Y.3d 43, 49-50 (2006)) (alteration in original) (additional citation omitted). To be successful on a claim for conversion, Plaintiff must demonstrate two elements: "(1) plaintiff's possessory right or interest in the property[,] and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Feinsod, 347 F. Supp. 3d at 167 (quoting Colavito, 8 N.Y.3d at 50) (alteration in original).

Here, while there is no dispute that Plaintiff had a possessory interest in his personal property stored within the Premises, there are substantial questions of fact as to whether the Town unlawfully exercised dominion over that property. The crux of this action is whether the Town unlawfully demolished the Premises in violation of Plaintiff's procedural due process rights. Enjoined with that issue is whether the Town also unlawfully disposed of Plaintiff's personal property stored within the Premises. The determination of one claim necessarily involves the determination of the other. Plaintiff even acknowledges so much in his

memorandum of law in support of his motion for summary judgment wherein he argues that all of his personal property was "removed, destroyed or otherwise disposed of in connection with the demolition of the Premises, and [he] was not provided with any opportunity to object or contest the deprivation of such personal property." (Pl. Mem. of Law in Supp. of Mot. for Summ. J. 29.) For these reasons, this Court finds that there are genuine issues of material fact that preclude summary judgment with respect to Plaintiff's claim for conversion. Accordingly, the Court respectfully recommends that Plaintiff's motion for summary judgment be denied with respect to his conversion claim.

F.    Trespass

Both the Town Defendants and H2M seek summary judgment with respect to Plaintiff's eighth cause of action for trespass, which alleges that Defendants entered the Premises without authority to do so and, as a result, Plaintiff's property – both real and personal – was destroyed, removed or otherwise disposed of. (Compl. ¶¶ 155-61.) The Court agrees with Plaintiff that there are issues of fact with this claim that warrant submitting it to a jury.

"Under New York law, trespass is the interference with a person's right to possession of real property either by an unlawful act or a lawful act performed in an unlawful manner." New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1361 (2d Cir. 1989) (citing Ivancic v. Olmstead, 66 N.Y.2d 349, 352 (1985)). "The requisite elements for a claim of trespass are the intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent." Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 293 (S.D.N.Y. 2015) (citing cases).

Here, the Town and H2M argue that they cannot be liable for trespass because, pursuant to Chapter 90, they were lawfully entitled to enter the Premises to conduct an inspection and

survey.  (H2M Mem. of Law in Supp. of Mot. for Summ. J. 3-5; Town Mem. of Law in Supp. of Mot. for Summ. J. 29-30.)  Moreover, the Town argues that under its police powers, it had the authority to enter the Premises because it was reported as open and abandoned and, therefore, posed a threat to public safety.  (Town Mem. of Law in Supp. of Mot. for Summ. J. 29.)  However, as Plaintiff points out, there are issues of fact here as to whether the Town complied with the requirements of Chapter 90 in demolishing the Premises.  Accordingly, there is a question of fact as to whether the Town – and H2M, who acted at the Town's direction and authorization – were lawfully entitled, pursuant to Chapter 90, to enter the premises.  Reasonable factfinders could differ as to whether the evidence supports a finding of liability for trespass by the Town and H2M.

For the foregoing reasons, this Court respectfully recommends that both the Town Defendants' and H2M's motions for summary judgment be denied with respect to Plaintiff's trespass claim.

G.   Constructive Bailment

In his ninth cause of action, Plaintiff alleges that the Town created a constructive bailment over his personal property and possessions when they entered the interior the Premises on December 30, 2014 in response to a complaint about the front door of the Premises being left open.  (Compl. ¶¶ 162-69.)  According to Plaintiff, as a result of the constructive bailment created, the Town is liable for the loss of Plaintiff's personal property.  (Id. ¶ 169.)  This claim is also alleged against Defendant Gappsi; however, Gappsi has not moved for summary judgment herein.

"Under New York law, a bailment is defined as 'a delivery of personal property for some particular purpose . . . upon a contract express or implied, and that after such purpose has been

fulfilled it shall be redelivered to the person who delivered it, or otherwise dealt with according to his directions or kept until he reclaims it, as the case may be.'" <u>Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.</u>, 784 F. Supp. 2d 296, 306 (S.D.N.Y. 2011) (quoting <u>Osborn v. Cline</u>, 263 N.Y. 434, 437 (1934)) (additional citation omitted).  A "constructive" or "implied bailment" arises "when one comes into lawful possession of personal property of another, other than by mutual contract of bailment; such possessor may be treated as a bailee of property by operation of law and may reasonably be referred to as a constructive bailee." <u>Isik Jewelry v. Mars Media, Inc.</u>, 418 F. Supp. 2d 112, 124 (E.D.N.Y. 2005) (citation omitted).  A constructive bailment "may arise from the bare fact of the thing coming into the actual possession and control of a person fortuitously, or by mistake as to the duty or ability or the recipient to effect the purpose contemplated by the absolute owner." <u>Ancile Inv. Co.</u>, 784 F. Supp. 2d at 307 (citation omitted). However, "possession by the bailee of the bailor's property is crucial to a finding of an implied bailment." <u>Isik Jewelry</u>, 418 F. Supp. 2d at 124.

Here, there is nothing in the evidence before the Court that suggests that the Town ever had possession of Plaintiff's personal property.  Although it is undisputed that the Town entered the interior of the Premises on December 30, 2014, there is no evidence that any of Plaintiff's personal property was removed from the Premises by the Town.  Nor can possession of Plaintiff's personal property be imputed to the Town simply by virtue of their entry into the interior of the Premises.  "The determination as to whether the relationship is one of bailor and bailee turns on whether there is a relinquishment of exclusive possession, control and dominion over the property." <u>Id.</u> at 120 (citation omitted).  Such facts are simply not present in this action.

Based on the foregoing, this Court respectfully recommends that the Town Defendants' motion for summary judgment be granted with respect to Plaintiff's claim for a constructive bailment, as alleged against the Town.

H.    Cutting and Carrying Off Trees or Timber

Both Plaintiff and H2M move for summary judgment with respect to Plaintiff's tenth cause of action, which seeks treble damages pursuant to Section 861 of the New York RPAPL for cutting and carrying off trees or timber.  (Compl. ¶¶ 170-75.)  The Town opposes Plaintiff's motion with respect to the claim as alleged against the Town.

"Whenever an individual cuts down trees without the property owner's permission, the property owner may maintain an action, pursuant to RPAPL 861, for treble damages."  Zablow v. DiSavino, 802 N.Y.S.2d 746, 749 (2d Dep't 2005) (citing cases).  Here, Plaintiff asserts that there were trees, bushes, and other vegetation on the Premises prior to its demolition, which were removed by Defendants, without Plaintiff's permission, at the time of demolition.  While the Complaint maintains that this cause of action is alleged against all of the "State Defendants," Plaintiff's motion for summary judgment seeks judgment on this claim only as to Defendants Town and L & G.  (Pl. Mem. of Law in Supp. of Mot. for Summ. J. 27-28.)

There is undisputed evidence here that, after conferring with the Town, L&G removed a blighted tree from the Premises at the time of demolition.  (Town 56.1 ¶ 204.)  There is also evidence that H2M advised the Town to remove large branches that were overhanging the roof of the premises, which the Town engaged Gappsi to perform.  (Id. ¶¶ 114, 123, 131.)  However, there is no evidence to suggest that H2M was involved in the actual removal of any trees, bushes or vegetation on the Premises.  Rather, as Plaintiff acknowledges, the Survey Report merely recommended that all weeds and wild growth be cut down to an acceptable level.  Such a

recommendation does not appear to be covered by RPAPL § 861.  Accordingly, as there does not appear to be any issue of fact with respect to H2M's involvement in the cutting of trees or timber on the Premises within the meaning of RPAPL § 861, this Court respectfully recommends that H2M's motion for summary judgment be granted with respect to Plaintiff's tenth cause of action.

With respect to Defendants Town and L&G, however, there are issues of fact that preclude summary judgment on this claim.  As with Plaintiff's conversion claim, the issue of whether the Town – and L&G, who acted at the Town's direction and authorization – unlawfully removed any trees is inextricably intertwined with whether the Town's decision to demolish the Premises was made lawfully.  Again, determination of one claim necessarily impacts the determination of the other.  As such, this Court respectfully recommends that Plaintiff's motion for summary judgment with respect to his claim for cutting and carrying off trees or timber, pursuant to RPAPL § 861, as alleged against the Town and L&G, be denied.

I.    Res Ipsa Loquitur

Plaintiff's thirteenth cause of action asserts a claim for res ipsa loquitur, alleging that if not for an act of negligence, the Premises would not have been demolished.  (Compl. ¶¶ 194-202.)  However, as both the Town and H2M point out in their motion papers, res ipsa loquitur is not a cause of action, but rather, an "evidentiary doctrine that allows an inference of negligence [to] be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence."  County of Erie v. Colgan Air, Inc., 711 F.3d 147, 149 n.1 (2d Cir. 2013) (quoting Dermatossian v. N.Y.C. Transit Auth., 67 N.Y.2d 219, 226 (1986)) (alteration in original).  "The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury . . . ."  County of Erie, 711 F.3d at 149 n.1 (citation omitted).

As the Second Circuit and various other lower courts have held, "the doctrine of res ipsa loquitur does not constitute a separate cause of action." USAA Cas. Ins. Co. v. Permanent Mission of Republic of Namibia, 681 F.3d 103, 105 n.6 (2d Cir. 2012) (citation omitted); see also Horton v. Greenwich Hosp., No. 12 Civ. 4436, 2014 WL 956468, at *2 (S.D.N.Y. Mar. 10, 2014) (stating that res ipsa loquitur is "an evidentiary standard, not a cause of action"); Cafferty v. Cayuga Med. Ctr., No. 5:08-CV-0179, 2011 WL 541809, at *5 n.3 (N.D.N.Y. Feb. 8, 2011) (stating that "res ipsa loquitur is merely an evidentiary rule relating to the sufficiency of a plaintiff's proof on a negligence claim, and as such does not constitute a separate cause of action"). Since Plaintiff has already alleged various negligence claims against the Defendants herein, "the purported cause of action based on res ipsa loquitur is redundant" and should be dismissed. Cafferty, 2011 WL 541809, at *5 n.3. To the extent Plaintiff seeks to rely on a theory of res ipsa loquitur at trial, "that is an issue to be decided – at the earliest – on a motion in limine before the trial." Horton, 2014 WL 956468, at *2.

Accordingly, this Court respectfully recommends that the Town Defendants' and H2M's motions for summary judgment with respect to Plaintiff's thirteenth cause of action for res ipsa loquitur be granted and that the claim be dismissed, without prejudice to Plaintiff renewing his argument for the inference to be applied on an in limine motion at the time of trial.

J.      Wrongful Eviction

Plaintiff's fourteenth cause of action alleges a claim for wrongful eviction against all Defendants under Section 853 of the New York Real Property and Proceedings Law. (Compl. ¶¶ 203-12.) Both the Town and H2M seek summary judgment with respect to this claim.

To succeed on a claim brought pursuant to Section 853 of the RPAPL, Plaintiff must demonstrate that he was "disseized, ejected, or put out of real property in a forcible or unlawful

manner, or, after he has been put out, is held and kept out by force or by putting him in fear of personal violence or by unlawful means." Thomas v. City of New York, No. 12-CV-5061, 2013 WL 3810217, at *7 (E.D.N.Y. July 23, 2013) (quoting N.Y. RPAPL § 853). Plaintiff asserts that the demolition of the Premises amounts to a wrongful eviction under the statute.

Plaintiff has produced no case law – and the Court's independent research could not find any – where Section 853 of the RPAPL has been applied to any set of facts outside of a landlord-tenant dispute. Moreover, as the Town argues, Plaintiff has not been disseized of his real property; rather, the building on the Premises was demolished. Plaintiff still owns, and is still entitled to the use of, the Premises upon which the demolished building sat. This Court finds that the facts herein do not support a claim under what is clearly intended to be a statute designed to safeguard the rights of tenants in landlord-tenant disputes. Based on the case law, it appears that Section 853 has never been applied to a case involving the demolition of a building, pursuant to a town code, and the Court finds no basis to extend the statute to Plaintiff's claim herein. It appears that Plaintiff simply included this claim in his Complaint in an attempt to collect treble damages, as the statute provides for. See N.Y. RPAPL § 853 (stating that a plaintiff who succeeds on a claim brought pursuant to § 853 "is entitled to recover treble damages in an action therefor against the wrong-doer"). Accordingly, this Court respectfully recommends that the Town Defendants' and H2M's motions for summary judgment be granted with respect to Plaintiff's fourteenth cause of action for wrongful eviction.

K.     H2M's Cross-Claims for Contribution and Indemnification

Finally, H2M seeks summary judgment with respect to all cross-claims for contribution alleged against it by all other co-Defendants, as well as with respect to the Town Defendants' cross-claim for indemnification. In their opposition to H2M's motion, the Town Defendants

agree that their cross-claim for indemnification should be dismissed as to H2M because "there is no basis under either common law or contract upon which a duty to indemnify could be found." (Town Mem. of Law in Opp'n to H2M's Mot. for Summ. J. 20.)  Accordingly, this Court respectfully recommends that H2M's motion for summary judgment with respect to the Town Defendants' cross-claim for indemnification be granted.

With respect to the various cross-claims for contribution, however, it is well-settled that claims for contribution do not accrue "until a judgment or settlement has been paid."  Indian Harbor Ins. Co. v. City of San Diego, 972 F. Supp. 2d 634, 645 (S.D.N.Y. 2013) (citing Prudential Lines, Inc. v. General Tire Int'l Co., 440 F. Supp. 556, 558 (S.D.N.Y. 1977) (collecting cases)); see also Hanson v. New York City, No. 15-cv-1447, 2018 WL 1513632, at *23 (E.D.N.Y. Mar. 27, 2018) (noting that contribution and indemnification claims "do not generally ripen until a judgment in the underlying action is paid"); Warwick Admin. Group v. Avon Prods., Inc., 820 F. Supp. 116, 124 (S.D.N.Y. 1993) (stating that "a cause of action for contribution does not accrue until payment of the underlying liability has been made by the suing party").  The Court agrees with the wealth of case law on this issue that the determination of any cross-claims for contribution at this juncture is premature.  Accordingly, this Court respectfully recommends that H2M's motion for summary judgment with respect to all of the cross-claims for contribution asserted against it be denied.

<u>RECOMMENDATION</u>

For the foregoing reasons, this Court respectfully recommends that Plaintiff's motion for partial summary judgment, appearing at Docket Entry [104], be denied in its entirety.  The Court further recommends that the Town Defendants' motion for partial summary judgment, appearing

at Docket Entry [101], and H2M's motion for summary judgment, appearing at Docket Entry [99], be granted in part and denied in part.

Specifically, with respect to the Town Defendants' motion, the Court recommends that the Town Defendants be granted summary judgment with respect to Plaintiff's claims for (1) substantive due process (the Second and Third Causes of Action); (2) a declaratory judgment that Chapter 90 of the Town Code is unconstitutional (the Fourth Cause of Action); (3) negligence (the Fifth and Sixth Causes of Action); (4) a constructive bailment (the Ninth Cause of Action); (5) res ipsa loquitur (the Thirteenth Cause of Action); and, (6) wrongful eviction, pursuant to New York RPAPL § 853 (the Fourteenth Cause of Action).  The Court recommends that the Town Defendants' motion for partial summary judgment be denied with respect to Plaintiff's trespass claim (the Eighth Cause of Action).

Finally, with respect to H2M's motion, the Court recommends that H2M be granted summary judgment with respect to Plaintiff's claims for (1) cutting and carrying off trees or timber, pursuant to New York RPAPL § 861 (the Tenth Cause of Action); (2) negligence (the Eleventh Cause of Action); (3) res ipsa loquitur (the Thirteenth Cause of Action); and, (4) wrongful eviction, pursuant to New York RPAPL § 853 (the Fourteenth Cause of Action).  The Court recommends that H2M's motion for summary judgment be denied with respect to Plaintiff's trespass claim (the Eighth Cause of Action).  In addition, the Court recommends that H2M's motion for summary judgment be granted as unopposed with respect to the Town Defendants' cross-claims for indemnification.  However, the Court recommends that H2M's motion be denied as premature with respect to the cross-claims for contribution asserted against it by all Defendants.

<u>OBJECTIONS</u>

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); <u>Caidor v. Onondaga Cnty.</u>, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED:**

Dated:  Central Islip, New York
          February 22, 2019                                        /s/        Anne. Y. Shields
                                                                   ANNE Y. SHIELDS
                                                                   United States Magistrate Judge